UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X
BERNARD PEREZ,

                           Plaintiff,                        15 CV 1375 (JBW) (MDG)

           -against-                              **FIRST AMENDED**
                                                                  **COMPLAINT**

**THE CITY OF NEW YORK, POLICE OFFICER**        **JURY TRIAL DEMANDED**
**JUSTIN DELMONICO (Shield 00390, 75th Precinct),**
**POLICE OFFICER SAMUEL CAREY (Shield 23728,**
**75th Precinct), and SERGEANT GARY CALHOUN,**
**(Shield 00633, 75th Precinct),**
                                     Defendants.
-----------------------------------------------------------------------X

        Plaintiff **BERNARD PEREZ**, by his attorney, Joel Berger, Esq., for his complaint alleges, upon information and belief, as follows:

### *NATURE OF THE ACTION*

        1.      This is an action to recover money damages arising out of the violation of plaintiff's rights under the Constitution and laws of the United States and the State of New York, including false arrest, false imprisonment and malicious prosecution, by employees of the New York City Police Department (NYPD).

### *JURISDICTION AND VENUE*

        2.      This action is brought pursuant to 42 U.S.C. §§ 1983 and 1988, and the First, Fourth, Fifth and Fourteenth Amendments to the Constitution of the United States.

        3.      The jurisdiction of this Court is predicated upon 28 U.S.C. §§ 1331 and 1343.

        4.      Venue is proper in this district pursuant to 28 U.S.C. § 1391 (b).

### *PENDENT JURISDICTION*

        5.      This Court also has jurisdiction over plaintiff's state law claims, pursuant to its pendent or supplemental jurisdiction as codified in 28 U.S.C. § 1367.

6. On January 21, 2015, within ninety days after the claims alleged in this complaint arose, a verified Notice of Claim was duly served upon the Comptroller of the City of New York pursuant to General Municipal Law § 50-e.

7. At least thirty days have elapsed since the service of the Notice of Claim, and adjustment or payment of the claims has been neglected or refused by defendant City of New York.

8. This action is being commenced within one year and ninety days after the happening of the events upon which the claims are based.

## JURY DEMAND

9. Plaintiff demands trial by jury in this action.

## PARTIES

10. Plaintiff **BERNARD PEREZ** is a dark-skinned Latino male, a citizen of the United States and a resident of the State of New York.

11. Mr. Perez is gainfully employed as an electrician's assistant.

12. Defendant City of New York is a municipal corporation organized under the laws of the State of New York.

13. Defendant City of New York operates the NYPD, a department or agency of defendant City of New York responsible for the appointment, training, supervision, promotion and discipline of police officers and supervisory police officers, including the individually named defendants herein.

14. At all times relevant herein, defendant Justin Delmonico, Shield 00390, was a police officers employed by the NYPD, assigned to the 75th Precinct in Brooklyn, NY.

15. At all times relevant herein, defendant Samuel Carey, Shield 23728, was a police

officers employed by the NYPD, assigned to the 75th Precinct in Brooklyn, NY.

16.     At all times relevant herein, defendant Gary Calhoun was a Sergeant, a supervisory police officer, assigned to the 75th Precinct in Brooklyn, NY.

17.     At all times relevant herein, defendants Delmonico, Carey and Calhoun were acting as agents, servants and employees of defendant City of New York and the NYPD.

18.     At all times relevant herein, all defendants were all acting under color of state law.

## *FACTS*

19.     On Thursday, September 11, 2014, at approximately 2:35 P.M., at Glenmore and Pennsylvania Avenues in Brooklyn, NY, only a few blocks from plaintiff's home, two police officers of the 75th Precinct, in plain clothes and an unmarked vehicle, stopped plaintiff's vehicle, a Mercedes Benz, for an alleged minor traffic infraction -- tail light/brake light bulb out.

20.     Plaintiff's tail light/brake light was not out, and the allegation that it was out was a subterfuge for the racial profiling of a dark-skinned Latino male driving a luxury vehicle.

21.     One of the two officers who stopped plaintiff was defendant PO Justin Delmonico, Shield 00390, and the other was defendant PO Samuel Carey, Shield 23728.

22.     Plaintiff complied fully with the officers' requests for identification, presenting them with valid up-to-date documents -- driver's license, vehicle registration and proof of insurance -- upon their request.

23.     Although plaintiff also showed officers a bank card for identification, at no time did he refuse to present his driver's license, vehicle registration and proof of insurance, or even hesitate to provide them.

24.     Defendants Delmonico and Carey were aware that plaintiff was the lawful owner of

3

the vehicle and that it was not stolen, since they had stopped plaintiff in the same vehicle approximately two months earlier, and had validated his credentials as the owner at that time. *See* ¶¶ 35-38, below.

25. Even though plaintiff's credentials were in order and the officers knew from their pervious encounter with him that the vehicle was registered to him, the officers required him to exit his vehicle and stand behind it for approximately 30 minutes.

26. Delmonico and Carey then proceeded to search plaintiff's vehicle.

27. Since the traffic stop was for an alleged minor infraction and the officers knew that plaintiff's credentials were all valid and that he was the lawful owner of the vehicle, defendants did not have probable cause to search plaintiff's vehicle and the search was patently illegal.

28. There was no valid reason for the police to take any action other than writing up citations for alleged violations of the Vehicle and Traffic law.

29. The officers instead arrested plaintiff, and he was taken in a police van to the 75th Precinct.

30. Plaintiff was not told why he was being arrested.

31. At the Precinct desk the male officer in the van claimed that plaintiff had two warrants.

32. The two warrants in question, issued by the NYC Criminal Court in 1995 and 1997 for a single traffic infraction, were for someone named "Bernardo" Perez who was 6' 3" tall, whereas police records of the instant case establish that plaintiff is only 5' 9" tall. The warrants also reflected a different date of birth for "Bernardo" Perez, and a New Jersey address at which plaintiff has never lived.

4

33. The defendants realized that the warrants were not for plaintiff, and that they would have to release plaintiff with minor traffic citations if they could not find anything else to charge him with.

34. Defendant PO Delmonico then proceeded to write up a bogus criminal charge alleging that a gravity knife had been found in plaintiff's vehicle. (Criminal Possession of a Weapon in the Fourth Degree, P.L. § 265.01 (1), a class A misdemeanor.)

35. The knife was in fact an ordinary utility knife that plaintiff uses in his job as an electrician's assistant.

36. Delmonico knew that the knife was not a gravity knife.

. 37. On a nighttime incident approximately two months earlier Delmonico and Carey partner had approached plaintiff in his Mercedes Benz as it was parked in front of plaintiff's home, had checked plaintiff's credentials at that time, and had determined that the vehicle was registered to plaintiff.

38. Delmonico and Carey had observed at that time that plaintiff's Mercedes did not have a key in the ignition, an idiosyncrasy that plaintiff overcomes by twisting the key cylinder to start the vehicle, but they had determined nonetheless that the vehicle was registered to plaintiff and they were well aware of his ownership of the vehicle when they stopped him again on September 11, 2014.

39. On the nighttime incident approximately two months earlier, Delmonico and Carey had nonetheless illegally searched plaintiff's Mercedes Benz without probable cause and had found the very same knife.

40. On the nighttime incident approximately two months earlier Delmonico had merely

returned the knife to plaintiff rather than claiming that it was a gravity knife.

41. On September 11, 2014, plaintiff was taken in handcuffs from the 75th Precinct to Brooklyn Central Booking, where he remained until approximately 6:00 P.M. on Friday, September 12, 2014.

42. Plaintiff was then released on his own recognizance, after he had been imprisoned for approximately 27 ½ hours according to police records.

43. Plaintiff had to make additional trips to Brooklyn Criminal Court on October 20, 2014, December 15, 2014 and January 6, 2015.

44. For the January 6, 2015 court date defendant arresting officer Delmonico was summoned to the prosecutor's office and required in the presence of the prosecutor Kate Collins, Esq., and two Legal Aid Society defense attorneys, Julie Schaul, Esq. and Alaina Dart, Esq., to demonstrate that it was a gravity knife.

45. Despite approximately 15 efforts over the course of several minutes, Delmonico was unable to open the knife as a gravity knife.

46. Delmonico then managed to push the knife open using his thumb, but that obviously did not validate his claim that it was a gravity knife.

47. As a result of Delmonico's unsuccessful effort despite numerous attempts, in the presence of witnesses, to depict the knife as a gravity knife on January 6, 2015, the prosecution determined that the knife was not in fact a gravity knife.   .

48. Shortly after Delmonico's unsuccessful demonstration the prosecutor, Kate Collins, Esq., of the Kings County District Attorney's Office, went before the Criminal Court and stated on the record as follows:

> The People and defense counsel, we conducted a test of the gravity knife in question in my office this morning, and the gravity knife did not open with centrifugal force.
>
> We are satisfied that the knife is not in fact a gravity knife.

Transcript of proceedings in *People v. Bernard Perez*, Docket No 2014KN068623, Criminal Court of the State of New York, Kings County, Jan. 6, 2015, p. 2 (Part AP5, Hon. Laura R. Johnson, J.).

49.     In light of the obvious damage to the credibility of PO Delmonico as the complainant, ADA Collins also announced that "we are choosing not to go forward with the remaining traffic infractions," and moved to "dismiss this case in the interest of justice." *Id.*

50.     Accordingly, all charges against plaintiff were dismissed and sealed.

51.     The dismissal "in the interest of justice" is a favorable termination for purposes of a malicious prosecution lawsuit unless the disposition "was inconsistent with the innocence of the accused." *Cantalino v. Danner*, 96 N.Y. 2d 391, 396 (2001).

52.     In this case the dismissal obviously was not inconsistent with plaintiff's innocence. The gravity knife charge was dismissed on the merits and in light of PO Delmonico's fabrication of that charge his credibility on the traffic infractions was severely compromised.

53.     PO Delmonico violated Penal Law § 210.45, (making false statements, a Class A misdemeanor), and NYPD Patrol Guide § 203-08 (making false official statements, a departmental infraction for which the penalty is presumptively dismissal from the police department), swearing in a Criminal Court Complaint that he signed that he personally had tested the knife when he took it from plaintiff's vehicle and that the knife was in fact a gravity knife.

54.     PO Delmonico's own Supporting Deposition for the arrest contradicts his Criminal Court Complaint, stating that he "observed another person" open the knife as a gravity knife rather

7

than opening it as such himself.

55. One or more NYPD supervisors had to approve the arrest and detention of plaintiff, and the false charges against him.

56. According to NYPD records that supervisor was defendant sergeant Gary Calhoun, Shield 00622.

57. Defendant Calhoun either knew that the knife was not in fact a gravity knife or he recklessly accepted Delmonico's untruthful statement that it was a gravity knife without bothering to determine whether Delmonico was telling the truth.

58. Defendant Delmonico has continued to lie about the knife, telling his defense counsel in this case that he was eventually able to open the knife as a gravity knife in court on January 6, 2015, and having defense counsel repeat that allegation to the Court at the Initial Conference on May 1, 2015, when in fact the only time he succeeded in opening the knife was when he pushed it open with his thumb rather than having it open with the force of gravity, and he knows full well that this maneuver conducted in the presence of at least three attorneys as witnesses did not satisfy ADA Collins or deter her from making a finding of fact against Delmonico and stating on the record in open court that "the knife is not in fact a gravity knife."

59. Delmonico is a defendant in another civil rights action before this Court, accused of falsely and maliciously arresting the plaintiff in that case merely in retaliation for being laughed at. Plaintiff Kendall Wright alleges that when he laughed at Delmonico and another officer over their unsuccessful attempt to catch two individuals who were fleeing from the officers for an undisclosed reason, Delmonico took umbrage and in a fit of pique illegally arrested Wright, falsely alleging under oath in a Criminal Court complaint that Wright was guilty of disorderly

8

conduct, obstructing governmental administration, and resisting arrest. *Wright v. The City of New York*, 14 CV 1376 (NGG) (JO). The criminal charges brought by Delmonico against Wright were dismissed.

60. Defendant PO Samuel Carey has been a defendant in two recent civil rights cases, before this Court, both settled by the City of New York. *Reese*, 11 CV 3849 (ARR) (RML) and *Edwards*, 13 CV 3337 (RJD) (JO). In *Reese* PO Carey was alleged to have been one of a team of officers who not only falsely arrested the plaintiff but humiliated him in public by exposing his genitals to onlookers in the course of a baseless arrest for disorderly conduct and resisting arrest. The charges were dismissed two months later. The plaintiff was in custody for approximately 28 hours.

61. Defendant Sgt. Gary Calhoun has accumulated seven civil rights cases against him before this Court. Some are pending and some have been settled. One of the settled cases is *Edwards*, in which PO Carey was also a defendant. Another of the cases went to trial before Judge Weinstein in December 2013, and the jury rendered a verdict of $200,000 against Calhoun as well as verdicts of $180,000 each against two officers whom he supervised, for a total of $560,000. The officers were alleged to have lied in bringing charges of possession of cocaine and a gun against Davis, who spent more than a year in detention on the charges but ultimately was acquitted at a jury trial before Judge Amon in 09 Cr 829. *Davis v. Velez et al.,* 12 CV 1219 (JBW) (JO), verdict of December 17, 2013.

62. Plaintiff was severely traumatized by his arrest, imprisonment and prosecution in this case, and has suffered substantial harm for which he is entitled to compensatory monetary damages.

63. Plaintiff is also entitled to punitive damages for defendants' deliberate and willful misrepresentation of the knife, made for the purpose of justifying an unlawful arrest.

## FIRST CLAIM FOR RELIEF

64. Plaintiff repeats and realleges the allegations contained in ¶¶ 1-63.

65. Defendants, by their conduct toward plaintiff alleged herein, violated plaintiff's rights guaranteed by 42 U.S.C. § 1983, the First, Fourth, Fifth, and Fourteenth Amendments to the Constitution of the United States, and Article I, §§ 1, 5, 6, 11 and 12 of the Constitution of the State of New York.

## SECOND CLAIM FOR RELIEF

66. Plaintiff repeats and realleges the allegations contained in ¶¶ 1-63 and 65.

67. The acts complained of herein are a direct and proximate result of the failure of the City of New York and the NYPD properly to select, train, supervise, promote and discipline police officers and supervisory officers.

68. The failure of the City of New York and the NYPD properly to select, train, supervise, promote and discipline police officers and supervisory officers constitutes gross and deliberate indifference to unconstitutional conduct by those officers.

69. The official policies, practices and customs of the City of New York and the NYPD, alleged in ¶¶ 1-55, 57 and 59-60 violated plaintiff's rights guaranteed by 42 USC § 1983, 1983, the Fourth, Fifth, and Fourteenth Amendments to the Constitution of the United States, and Article I, §§ 1, 5, 6, 11 and 12 of the Constitution of the State of New York.

## THIRD CLAIM FOR RELIEF

70. Plaintiff repeats and realleges the allegations contained in ¶¶ 1-63, 65, and 67-69.

71. The conduct toward plaintiff alleged herein constituted false arrest, false imprisonment, malicious prosecution, and employee negligence.

72. The conduct toward plaintiff alleged herein subjected plaintiff to trauma, shock, debasement, shame, fright, fear, humiliation, embarrassment, loss of freedom, harassment, and physical, psychological and emotional injury, trauma, pain, and suffering.

## *FOURTH CLAIM FOR RELIEF*

73. Plaintiff repeats and realleges the allegations contained in ¶¶ 1-63, 65, 67-69, and 71-72.

74. At all times relevant herein, the individual defendants were on duty and were acting within the scope of their employment as agents, servants and employees of the City of New York, which is therefore responsible for their conduct under common law, state law and Article I, §§ 1, 5, 6, 11 and 12 of the Constitution of the State of New York.

## *PRAYER FOR RELIEF*

**WHEREFORE**, plaintiff respectfully requests judgment against defendants as follows:

(a) Compensatory damages against all defendants, jointly and severally;

(b) Punitive damages against all individual defendants, jointly and severally;

(c) Reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988; and

(d) Such other and further relief as this Court deems just and proper.

Dated: New York, New York
       May 4, 2015

/s/ Joel Berger
**JOEL BERGER**
360 Lexington Avenue, 16th Fl.
New York, New York 10017

                (212) 687-1425

              **ATTORNEY FOR PLAINTIFF**

TO: **JENNY WENG, ESQ**.
   Senior Counsel
   New York City Law Department
   Special Federal Litigation Division
   100 Church Street
   New York, NY 10007-2601

   **ATTORNEY FOR DEFENDANTS**